ROBINSON et al v. TUBULAR WOVEN FABRIC CO.

(District Court, D. Rhode Island. June 29, 1915.)

No. 6.

PATENTS ☜328—VALIDITY AND INFRINGEMENT—FLEXIBLE ELECTRICAL CONDUIT.

    The Osburn patent, No. 652,806, for a flexible electrical conduit, shows merely mechanical or structural improvements on the conduit of the Herrick patent, No. 456,271, and in view of the disclosures of the latter patent the claims of Osburn can only be sustained on a narrow construction, which limits them to the precise structure shown. As so construed, *held* not infringed.

In Equity. Suit by W. C. Robinson and others against the Tubular Woven Fabric Company. On final hearing. Decree for defendant.

Charles F. Perkins, of Boston, Mass., for complainant.
William Quinby, of Boston, Mass., for respondent.

BROWN, District Judge. The bill charges infringement of letters patent No. 652,806, July 3, 1900, to H. G. Osburn, for flexible electrical conduit.

The patentee states that his object is:

To provide a form of conduit which, while possessing the necessary rigidity and insulating properties, may be readily flexed or bent laterally to accommodate itself to the conditions of use, and, furthermore, to provide a conduit which can be manufactured at comparatively small cost."

Conducting wires for electric lighting, prior to the invention of the patent in suit, had been run through straight, rigid tubes with suitable

fittings to turn corners. A flexible tube was also in extensive use, and was constructed according to the Herrick patent, No. 456,271, July 21, 1891.

The specification of the Herrick patent sets forth the requirements of a flexible conduit or tube; that it shall protect and insulate the conductor introduced therein; that it shall be flexible to such an extent that it shall be capable of being bent without injury to a desired angle or curve. His conduit was made of three parts—the inner part or lining, formed of a strip of suitable material, spirally wound, with the turns slightly separated; the second part, a protective wrapping constituted by a tape or strip applied to the exterior of the lining in a manner to cover the narrow space left between the turns of the spiral, this protecting strip to be composed of some waterproof flexible material, such as oil paper or rubber-covered cloth (the patentee states that it may be applied in various ways, so as to cover the lining in the line of the separation between the turns of the inner spiral lining); and the third part is shown as "a seamless tube of threads interwoven." This is applied outside the protecting strip, or second part.

Herrick says concerning his outer covering that it is preferably:

"Nonextensible in itself, in order that strain on the conduit in the direction of its length may not operate to separate further the turns of the spiral lining. To this end the said covering preferably is formed by weaving threads together around the lining and protective wrapping in the form of a tube. A braided tubular covering having threads introduced therein in a manner to destroy its extensibility would be the equivalent of the woven covering."

He makes special reference to other means for rendering the conduit nonextensible in the following language:

"When the protecting strip is arranged as in Fig. 4—that is, extending longitudinally of the spiral lining and folded around the same, with its edges overlapping—the said protective strip itself will render the conduit non extensible; and in this case an ordinary braided covering—that is, one without longitudinal threads—may be employed, if desired."

Herrick clearly indicates that the whole conduit should be nonextensible, and in claim 2 of his patent makes express reference to a nonextensible woven or braided covering. He also indicates clearly in the language we have quoted, and as illustrated in Fig. 4, the use of his protective wrapping applied immediately to the spiral strip to render the spiral nonextensible. He thus provides two ways of preventing further separation of the turns of his spiral: First, a nonextensible outer covering; second, a protective strip applied longitudinally directly to the spiral strip.

This patent is a clear disclosure of two specific means for preventing extension of the inner spiral strip, as well as for making the entire tube nonextensible.

After Herrick, therefore, there could be no broad novelty in providing means to prevent the separation of the turns of the spiral, and thus to prevent the extension in length of the conduit as a whole, and the consequent reduction of the interior diameter of the tube.

The plaintiff's brief states that the commercial Herrick device employed paper board or fiber for the spiral strip, which constituted

the main body of the tube and the insulating protection for the conductor; that a rubber-covered, soft tape, spirally or helically wound, furnished the second member, or protective wrapping. No testimony is pointed out to indicate that in commercial practice under the Herrick patent the protective wrapping was applied in the manner indicated in Fig. 4 of the Herrick patent, and described in the foregoing quotation from the specification.

It is conceded that the Herrick conduit, popularly known as "circular loom," or "loom," solved the problem of a flexible conduit, if carefully made and honestly used.

It is alleged that a defect of the Herrick conduit was the separable character of its members, and that the spiral lining, which composed the main body of the conduit, was removable from the jacket, that workmen were tempted to remove it in order to facilitate the insertion of the conductor, and that the jacket then concealed the absence of the spiral member. It is also urged that the removal might be due to accident or careless use.

The Osburn patent in suit discloses a spiral member, described as a semiflexible element, corresponding in substance to the spiral member of Herrick. The convolutions or turns of this member are, in Osburn, bound together or locked in a longitudinal direction by means of flexible material interwoven therewith, to impart longitudinal strength to the tube; i. e., strength to withstand distortion or pull lengthwise of the tube. He describes the convolutions as forming, as it were, the woof threads or element of the fabrics, and the pliable material extending longitudinally as constituting the warp threads or element.

Referring to a covering for the tube thus constructed Osburn says:

"In flexible conduits of the prior art the structure has been such that the covering has been relied upon to impart longitudinal strength to the tube, and it has therefore been necessary to employ for the covering threads woven together, with one series of threads extending circumferentially and another series extending longitudinally. Due to the fact that the tubelike skeleton of my construction possesses in itself longitudinal rigidity and strength, other forms of covering having little or no tensile strength may be employed—as, for instance, a braided covering—and the cost of the conduit may thus be materially decreased."

Osburn's departure from the Herrick patent, therefore, is not in the provision of means for joining or binding the turns of the spiral, but merely in the provision of special means differing from those pointed out by Herrick for that purpose. Instead of using Herrick's longitudinal protective cover, pointed out in Fig. 4 and in the specification, Osburn uses interwoven threads or other pliable material for this purpose. Herrick clearly points out that with the construction shown in Fig. 4 the conduit is rendered nonextensible, and that in this case an ordinary braided covering without longitudinal threads may be employed if desired. Osburn's statement that the tubelike skeleton of his construction possesses longitudinal rigidity, and thus permits the use of a braided covering, is substantially a copy of what is above quoted from the Herrick patent. This emphasizes the fact that Herrick clearly discloses that a conduit having a spiral protective

strip may be rendered nonextensible without the use of a nonextensible outer covering. This is indicated as clearly in the Herrick patent as in the Osburn patent. Osburn shows a difference, however, in that he refers to the feature of the thread or twine passing across the inner and outer faces of alternate convolutions and forming layers upon the interior and exterior, while at the same time serving to effectually fasten the parts of the tube together.

It is conceded that the Osburn two-part structure, without some external protective or insulating means, is not adapted for use as a complete commercial conduit, and that either an outer coating or some substance applied externally is requisite for this purpose.

Assuming that the difference from Herrick in the means of uniting the turns of the spiral strip is an improvement, we have next to consider whether it was a patentable improvement and of such breadth as to justify the very broad claims of the Osburn patent. The patent has 12 claims, all in suit except the seventh and eighth. They need not be distinguished, as they are substantially the same; the elements being a flexible warp and a semiflexible helically arranged weft.

The complainant contends that flexible electric conduits are in a distinct art, since there are special requirements for such conduits. He therefore urges that for all practical purposes the prior art appurtenant to this case is represented by the Herrick patent. He thus seeks to exclude many of the prior patented structures upon which the defendant relies.

These contentions I must regard as unsound. The special requirements for flexible electric conduits were pointed out and met by Herrick. Osburn suggests nothing novel in this regard, but shows merely mechanical or structural improvements.

The Osburn patent must be regarded as disclosing merely an improved structure which functionally is the same as Herrick's. It has no functional advantages over the Herrick structure, when that is used in a way in which it is capable of use. The field covered by Herrick cannot be reoccupied by Osburn.

As Osburn's improvement was merely structural, it becomes pertinent to inquire whether his conduit, considered as a structure, was novel, and, if old, whether invention was involved in applying an old structure to the uses indicated by Herrick in his patent. It is therefore competent for the defendant to rely upon what was well known in the art of constructing flexible tubes, even if such tubes of the prior art had not in fact been applied to use as conduits for electrical conductors.

It seems to me quite clear from the defendant's evidence as to the prior art of tube making that the claims of the patent in suit cannot cover broadly tubular structures, when used for electrical purposes or any other purposes, merely because they use semiflexible, helical elements, the convolutions of which are locked together by interwoven longitudinally extending strands of pliable material.

Seamless woven tubes were old, and semiflexible, helical weft members in seamless woven tubes were old. A seamless woven tube comprising flexible warps interwoven with a semiflexible helical weft was old before Osburn.

Complainant's expert, Mr. Gooding, specifies five prior patents in which the warp and weft are woven and have different characteristics:

No. 57,233, August 14, 1866, White & Bedford.
No. 417,796, December 24, 1889, Taft.
No. 486,620, November 22, 1892, Stowe.
No. 486,621, November 22, 1892, Stowe.
No. 25,343, November 1, 1897, Blodner (British).
See, also, Callahan, 218,661 and 222,770, of 1879.

It is unnecessary to consider the other patents cited by the defendant; neither is it necessary to describe these patents in detail. The prior art in my opinion fully discloses the mode of constructing a flexible woven tube by interweaving a semiflexible weft and a flexible woof, whereby the tube was made suitable to resist both radial compression and longitudinal extension. In my opinion it would not, after the Herrick patent, involve invention to substitute for his tube a tube involving such general features as are claimed, merely for the purpose of preventing the separation of parts.

The defendant's product known as "Duraduct" is a seamless woven tube, single wall, whose warp threads are made of cotton and whose weft threads are round, hard-twisted paper. The weft is stiffer than the warp, but this feature is shown in patents of the prior art. It is the product of a circular loom.

I am of the opinion that the claims of the Osburn patent are entirely too broad; that he is not entitled, in view of the prior art, to prevent the use upon a circular loom of twisted paper for the weft and cotton threads for the warp, nor to control the application of a tube of such construction to the particular purpose of serving as a conduit or protective cover for electrical conductors.

Much of the Osburn specification is a mere statement of what is true generally of the ancient art of weaving fabrics in which warp and weft have different characteristics. If, by any liberality of construction, we could restrict the broad claims of his patent they would be restricted to the specific structures and materials mentioned, and could not include a structure like the defendant's tubular conduits. These seem to be a natural development from the prior art of the manufacture of tubing, and it seems legitimate to manufacture according to the methods and with the materials used by tube makers in order to produce a tube suitable for use as an electric conduit and having those general characteristics not new with Osburn, but which were pointed out by Herrick in his patent No. 456,271.

A weft of twisted paper had been used for a flat fabric produced on a flat loom. See letters patent to Robinson, 36,484, September 16, 1862.

The defendants are at liberty to use it upon a circular loom, even if the resulting woven tube is thereby stiffened, since woven tubes with a weft which serves to stiffen the structure are old. The specific material employed for the weft by the defendants is not suggested by the Osburn patent, but is a material suitable to be woven upon a circular loom, and the defendants cannot be denied its use merely because the complainant has claimed broadly as an element "semiflexible material," or material "having sufficient rigidity of structure to prevent

collapsing." If interpreted to cover the defendant's structure, each and all of the claims would, in my opinion, be void for excessive breadth.

The bill will be dismissed.